**Case No. 22-2**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

**STEPHEN C. STANKO, Appellant/Petitioner**

**v.**

**BRYAN STIRLING, Director, South Carolina Department of Corrections,
and MICHAEL STEPHAN, Warden Broad River Correctional Institution,
Appellee/Respondents**

———————————

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

———————————

**OPENING BRIEF OF APPELLANT**

———————————

E. CHARLES GROSE, JR. (Fed ID 6072)
The Grose Law Firm, LLC
400 Main Street
Greenwood, SC 29646
(864) 538-4466 (tel)
charles@groselawfirm.com

JOSEPH J. PERKOVICH
Phillips Black, Inc.
PO Box 4544
New York, NY 10163
212.400.1660 (tel)
888.543.4964 (fax)
j.perkovich@phillipsblack.org

JOSEPH C. WELLING‡
Phillips Black, Inc.
100 N. Tucker Blvd., Ste. 750
St. Louis, MO 63101
314.629.2492 (tel)
888.543.4964 (fax)
j.welling@phillipsblack.org

*Counsel for Petitioner Stephen C. Stanko*

---

‡ Notice of Appearance contingent on admission to the Court. Application for admission is pending ECF registration, which is pending as of Monday, June 27, 2022.

i

# TABLE OF CONTENTS

**TABLE OF CONTENTS**................................................................**ii**

**TABLE OF AUTHORITIES** ................................................**iv**

**I. JURISDICTIONAL STATEMENT** ...................................**1**

    A.    District Court Jurisdiction .........................................1

    B.    Timeliness...................................................................1

    C.    Court of Appeals Jurisdiction and Appealability Pursuant to the Collateral Order Doctrine ..........................................1

**II. ISSUES PRESENTED** ......................................................**8**

    1.    Whether the delimited references to *ex parte* funding motions and corresponding *ex parte* funding orders in a Rule 59(e) motion permits ordering these documents unsealed when the Rule 59(e) motion does not challenge disposition of the *ex parte* funding motions. .............................8

    2.    Whether § 3599(g)(3) requires unsealing *ex parte* specialist funding requests and orders—or even disclosing funding amounts—upon entry of a summary judgment order when a Rule 59(e) motion is pending. ...........8

**III.       STATEMENT OF THE CASE**...............................**8**

**IV. SUMMARY OF THE ARGUMENT**................................**15**

**V. ARGUMENT**...................................................................**16**

    A.    Standards of Review................................................16

    B.    The Interest in Adversarial Fairness for Indigent Petitioners in These Filings Being *Ex Parte* and Under Seal Remains Great ..........................17

    1.    Petitioner's Due Process Interest in Confidentiality That Was the Basis For the Funding Motions Being *Ex Parte* and Under Seal is Violated by the Order to Unseal Because He Has Not Completed Consultation with Funded Experts and Issues of Litigation Tactics and Strategy Remain...17

    2.    Petitioner Has Not Placed the Content of the Motions or Orders at Issue Because He is Not Challenging Their Disposition...................................18

    3.    Neither the District Court nor Respondents Cite Any Authority for the Proposition that Mere Reference to an *Ex Parte* Filing Permits Unsealing It  20

    C.    Precedent Clearly Shows § 3599(g)(3) is Not Triggered While a Rule 59(e) Motion is Pending .........................................22

D.      Recent Supreme Court Decisions Involving Limitations on Evidentiary Development in Federal Court do Not Foreclose the Relief Sought Here... ...........................................................................................................24

**VI. CONCLUSION** ...................................................................................... **27**

**TABLE OF AUTHORITIES**

**Cases**

*Ake v. Oklahoma*, 470 U.S. 68 (1985) ........................................................4

*Ayestas v. Davis*, 138 S. Ct. 1080 (2018) ............................... 4, 9, 21, 27

*Bannister v. Davis*, 140 S. Ct. 1698 (2020) ....................................... 2, 23

*Beahn v. Gayles*, 550 F. Supp. 3d 259 (D. Md. 2021)..............................7

*Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1993) ................7

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949)..............2, 3

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)........................16

*Crutsinger v. Davis,* No. 4:07-cv-00703, 2018 WL 3743881 (N.D. Tex. Aug. 7, 2018) ..............................................................................................19

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ...............18

*Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164 (5th Cir. 2009)....................3

*James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993) .................................. 6, 16

*Madhi v. Stirling*, No. 8:16-3911, Doc. No. 154 (2019)........................19

*Martinez v. Ryan,* 566 U.S. 1 (2012) .............................................. 11, 25

*McWilliams v. Dunn*, 137 S. Ct. 1790 (2017)..........................................5

*Mercantile Nat. Bank at Dallas v. Langdeau*, 371 U.S. 555 (1963) .......................3

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ...............................................4

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ...........3

*Porter v. Clarke*, 852 F.3d 358 (4th Cir. 2017) ...................................7, 8

*Rhines v. Weber*, 544 U.S. 269 (2005)..................................................26

*Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019) ......................................16

*Shinn v. Ramirez*, 142 S. Ct. 1718 (2022).................................. 11, 25, 27

*Shoop v. Twyford*, No. 21-511, 2022 WL 2203347 (U.S. June 21, 2022).......... 2, 25

*State v. Council*, 515 S.E.2d 508 (S.C. 1999).......................................18

*State v. Stanko*, 741 S.E.2d 708 (S.C. 2013)...........................................9

*Stirling v. Stokes*, No. 21-938, 2022 WL 1738587 (U.S. May 31, 2022)...............11

*Stokes v. Stirling*, 10 F.4th 236 (4th Cir. 2021) ....................................11

iv

*Trevino v. Thaler*, 569 U.S. 413 (2013)..................................................25

*Under Seal v. Under Seal*, 326 F.3d 479 (4th Cir. 2003) ....................................2, 6

*United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337 (4th Cir. 2009)...................8

*United States v. Tsarnaev*, No. 13-10200-GAO, 2016 WL 4994954 (D. Mass. Sept. 16, 2016)...................................................23

*United States v. Williams*, No. CRIM. 06-00079 JMS, 2014 WL 2932365 (D. Haw. June 30, 2014)...................................................23

*Williams v. Ozmint*, 716 F.3d 801 (4th Cir. 2013)...................................................7

**Statutes**

18 U.S.C. § 3599 ...................................................... *passim*

28 U.S.C. § 1291 ...................................................1

28 U.S.C. § 2241 ...................................................1

28 U.S.C. § 2254 ...................................................... 1, 23, 25

**Other Authorities**

Guide to Judiciary Policy, Vol. 7, Pt. A ("CJA Guidelines")...................................23

Kristen E. Small, *Red Light, Green Light: A Primer on Interlocutory Appeals,* FOR THE DEFENSE, March 2016 at 35 ...................................................3, 4

**Rules**

Fed. R. App. P. 4 ...................................................1

Fed. R. Civ. P. 59 ...................................................... *passim*

Fed. R. Civ. P. 60 ...................................................18

# I.    JURISDICTIONAL STATEMENT

## A. District Court Jurisdiction

The District Court has jurisdiction over Mr. Stanko's Second Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §§ 2241 and 2254 ("Second Amended Petition"). Dkt. No. 65 at 16 (J.Appx.a16). "Mr. Stanko seeks relief from a Court of General Sessions for Horry County capital judgment in which he was convicted of capital murder on November 16, 2009, and a sentence of death was imposed on November 19, 2009." *Id*.

## B. Timeliness

This appeal is timely because Mr. Stanko filed his notice of appeal the day after entry of the order challenged. Fed. R. App. P. 4(1)(A) provides that the notice of appeal must be filed "within 30 days after the entry of the judgment or order appealed from." The order challenged was entered on May 15, 2022. Dkt. No. 113 (J.Appx.a555). Mr. Stanko filed his notice of appeal on May 16, 2022. Dkt. No. 115 (J.Appx.a564).

## C. Court of Appeals Jurisdiction and Appealability Pursuant to the Collateral Order Doctrine

28 U.S.C. § 1291 provides that the courts of appeals "shall have jurisdiction from all final decisions of the district courts of the United States." There is no final

appealable judgment in this case.[1] However, the Supreme Court "has long given" §1291 "a practical rather than a technical construction" and provided appellate jurisdiction pursuant to the collateral rule doctrine. *Cohen v. Beneficial Indus. Loan Corp*., 337 U.S. 541, 546 (1949).[2] Orders to unseal are appealable under this doctrine because they are "[1] conclusive, [2] resolve important questions separate from the merits, and [3] . . . effectively unreviewable on appeal from the final judgment in the underlying action." *Under Seal v. Under Seal*, 326 F.3d 479, 483 (4th Cir. 2003) (quotation omitted).[3]

---

[1] Following entry of summary judgment on March 24, 2022 (Dkt. No. 100 (J.Appx.a486)), Mr. Stanko timely filed his Fed. R. Civ. P. 59(e) Motion to Alter or Amend on April 20, 2022 (Dkt. No. 102 (J.Appx.a487)). *Bannister v. Davis*, 140 S. Ct. 1698, 1703 (2020) ("The filing of a Rule 59(e) motion within the 28-day period suspends the finality of the original judgment for purposes of an appeal."). When a petitioner timely files a Rule 59(e) motion, "there is no longer a final judgment to appeal from. Only the disposition of that motion restores the finality of the original judgment, thus starting the 30-day appeal clock." *Id*. (citations omitted).

[2] Although *Cohen* recited that the doctrine should only apply to "a small class" of orders (*id*.), the Court recently summarily applied it more expansively. *See Shoop v. Twyford*, No. 21-511, 2022 WL 2203347, at *4 n.3 (U.S. June 21, 2022).

[3] This Court has further held that a fourth element it has inconsistently applied as part of determining whether an order is reviewable under this doctrine— "present[s] a serious and unsettled question on appeal"—is not applicable at least as to an order to unseal. *Id*. This Court reasoned, not only is there inconsistent precedent of this Court on the fourth element, Supreme Court precedent does not include it. *Id*. at 481. *Cohen* relied on just the three elements, and "[s]ince *Cohen*, the [Supreme] Court has described and/or applied the collateral order analysis at least twenty-nine times in majority opinions. In every one of those instances, save one, the Court either identified or both identified and applied the three factors recited in *Cohen*." *Id*. at 481; *see also* the string cite *id*. at 481-82 n.1.

"A ruling conclusively determines an issue when it is 'made with the expectation that [it] will be the final word on the subject.'" Kristen E. Small, *Red Light, Green Light: A Primer on Interlocutory Appeals,* FOR THE DEFENSE, March 2016 at 35, 36 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 12 n.14 (1983)). "[A]ny decision which is tentative, informal or incomplete" or leaves "the matter open, unfinished or inconclusive" is not reviewable because it lacks conclusivity. *Cohen*, 337 U.S. at 546.

An order decides an issue that is "a separate and independent matter" when the issue disposed of is "anterior to the merits and not enmeshed in the factual and legal issues comprising the plaintiff's cause of action. *Mercantile Nat. Bank at Dallas v. Langdeau*, 371 U.S. 555, 558 (1963). But "separateness does not require a complete disconnect between a challenged order and the merits of the litigation." Small, *supra*, at 37 (characterizing, *e.g*., *Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164, 174-77 (5th Cir. 2009) as holding that "denial of a motion to dismiss under a state anti-SLAPP statue is separate from the merits of the claim, even though most such statutes require a determination of whether or not a plaintiff's suit has a possibility of success"). Further the separate issue must be "too important to be denied review." *Cohen*, 337 U.S. at 546.

Last, the doctrine requires that the order be effectively beyond the reach of an appeal of the final judgment. "The paradigmatic example of an effectively

unreviewable order" is "an improper denial of [an] entitlement [that] cannot be remedied after a final judgment." Small, *supra*, at 37. Small describes the example of an "order denying an entitlement to immunity from a suit" reasoning that the immunity is a "*right* not to be tried" and "not merely a defense to liability." *Id*. (emphasis added and removed) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985)).

Here, the order to unseal conclusively decided an issue involving an important right that is separate from the merits of the underlying habeas petition and is effectively unreviewable on appeal of the final judgment. Nothing about the order to unseal the *ex parte* filings is tentative or in any way suggests further litigation of the Respondents motion to unseal is expected. *See* Dkt. No. 113 (J.Appx.a555).

Like the important issue raised by denial of the right to immunity (distinct from a defense from liability), the order to unseal jeopardizes Petitioner's due process guarantee of fundamental fairness by putting an indigent petitioner on an unequal footing by compelling him to prematurely reveal strategy in order to obtain expert assistance. *Ake v. Oklahoma*, 470 U.S. 68, 76 (1985). While *ex parte* motions are generally disfavored, "they have their place." *Ayestas v. Davis*, 138 S. Ct. 1080, 1091 (2018). 18 U.S.C. § 3599(f) anticipates and permits *ex parte* proceedings on funding request on a "proper showing" of the "need for

confidentiality." An indigent should enjoy the privilege and confidentiality to which a non-indigent petitioner is entitled including confidential access to expert and investigative resources. *See McWilliams v. Dunn*, 137 S. Ct. 1790, 1799 (2017) (state has "constitutional duty to ensure indigent defendant access to meaningful expert assistance"). And this due process right in adversarial fairness in the current litigation is wholly distinct from the underlying matter which seeks habeas corpus relief from a state court judgment. *See* Dkt. No. 65 (J.Appx.a.57).

Finally, the issue decided in the unsealing order is effectively unreviewable on appeal of the final order, because by then the final disposition of the petition will have been decided after Respondents have already accessed the *ex parte* filing and been permitted to plead using their contents, and the District Court will have issued an order that would likely rely on the pleading of the contents.

In concluding the order was not reviewable under the collateral order doctrine, the District Court does not dispute that the first element of the collateral order doctrine is satisfied: that the order was conclusive. *See* Dkt. No. 125 at 3-4 (J.Appx.a592-93). As to the second point, the District Court asserts that the order to unseal was not collateral because it "is directly tied to the merits of arguments raised by Petitioner in his Rule 59 motion."[4] Dkt. No. 125 at 4 (J.Appx.a593). But

---

[4] Referring to Petitioner's Fed. R. Civ. P. 59(e) motion ("Rule 59(e) motion").

this ignores that the order to seal involves important issues related to the due process right to fundamental fairness of an indigent in adversarial proceedings and potential public interests in disclosure—issues distinct and separate from the merits of the claims in the underlying petition challenging a state court capital judgment. For illustration, a district court could grant a motion to unseal *ex parte* expert funding filings and still grant a writ of habeas corpus on the merits, or vice versa. The two are wholly separate issues. The District Court, in ignoring the separate due process right at stake, fails to address its importance. As to the third element, the District Court does not dispute that the order was effectively unreviewable on appeal of a final judgment, and instead argues that two of this Court's cases on which Petitioner relies, *Under Seal* and *James v. Jacobson*, 6 F.3d 233, 237, 240 (4th Cir. 1993), involved orders to unseal documents that were sealed because of parties' identities "and not merits-based arguments." Dkt. No. 125 at 4 (J.Appx.a593). The court fails to tie the distinction between the reasons for sealing the filings in the first place to any of the elements of the collateral rule doctrine. *See id*.

Because the order to unseal conclusively disposes of an issue involving an important right that is distinct from the merits of the underlying habeas petition, and the order is effectively unreviewable on appeal of a final judgment, this Court has jurisdiction over this interlocutory appeal.

*Mootness*

While mootness limits jurisdiction, and federal courts have a duty to examine it when it is in doubt regardless of whether any party raises it, *Williams v. Ozmint*, 716 F.3d 801, 809 (4th Cir. 2013), once a petitioner discharges the initial burden of establishing jurisdiction, the party invoking mootness has the burden of proving it. *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 98 (1993); *Beahn v. Gayles*, 550 F. Supp. 3d 259, 271 (D. Md. 2021).

In refusing to stay the proceedings pending disposition of this appeal, the District Court determined "the requested relief was moot given the ex parte shield had been removed." Dkt. No. 129 at 2 (J.Appx.a606).[5] Although the District Court confused whether it could provide a remedy with whether this Court could provide a remedy on interlocutory appeal, the doctrine of mootness "constitutes a limitation on [this Court's] jurisdiction." *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (quotation omitted). When, as here, the relevant jurisdictional facts are not in dispute or intertwined with facts in dispute, this Court reviews district court

---

[5] The District Court incorrectly conflates three distinct stay motions, claiming it has addressed these issues twice before. *Id*. at 3 (J.Appx.a607). Petitioner sought to stay the unsealing order pending this appeal. Dkt. No. 114 (J.Appx.a559). After Respondents communicated their intent to file a response to that motion, Petitioner sought a provisional stay of the unsealing order pending disposition of his motion to stay. Dkt. No. 117 (J.Appx.a567). After both of those motions were denied, Petitioner moved to stay proceedings pending this appeal: that is, to reschedule the response to his Rule 59(e) motion. Dkt. No. 126 (J.Appx.a595).

determinations of mootness de novo. *Id.*; *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009).

Here, the issue in controversy is not moot, because this Court can still provide a remedy by striking the order to unseal, striking Respondents' response to Petitioner's Rule 59(e) motion, and directing that Respondents may not plead any of the contents of the *ex parte* filings beyond their limited use in Petitioner's Rule 59(e) motion, which does not challenge or re-open litigation of the underlying funding orders granting under the supervision of the Chief Judge of this Court.

## II. ISSUES PRESENTED

This appeal challenges the District Court's grant of Respondents' motion to unseal *ex parte* filings related to requests for funding of specialist services pursuant to 18 U.S.C. § 3599, and in doing so raises two issues:

1. Whether the delimited references to *ex parte* funding motions and corresponding *ex parte* funding orders in a Rule 59(e) motion permits ordering these documents unsealed when the Rule 59(e) motion does not challenge disposition of the *ex parte* funding motions.

2. Whether § 3599(g)(3) requires unsealing *ex parte* specialist funding requests and orders—or even disclosing funding amounts—upon entry of a summary judgment order when a Rule 59(e) motion is pending.

## III. STATEMENT OF THE CASE

On November 19, 2019, undersigned counsel were appointed pursuant to 18 U.S.C. § 3599 to represent Mr. Stanko in these proceedings, challenging his capital judgment entered in Horry County, South Carolina, and affirmed on direct appeal

by the state supreme court.[6] Dkt. No. 11 (J.Appx.a14). On February 17, 2020, Petitioner filed a "Placeholder Petition" pursuant to the Court's appointment order and adhering to the form petition in use for prisoners of South Carolina. Dkt. No. 24 (J.Appx.a21).

On January 21, 2020, in an *ex parte* request filed January 21, 2020, Petitioner requested funding of specialist services arguing they are "reasonably necessary" pursuant to § 3599(f) and *Ayestas*, 138 S. Ct. at 1093-94[7]. Dkt. No. 19 (*ex parte*). The District Court, "with the concurrence on May 5, 2020, of Chief Judge Roger L. Gregory" of this Court, granted the request in an *ex parte* order. Dkt. No. 30 (*ex parte*).

---

[6] *State v. Stanko*, 741 S.E.2d 708 (S.C. 2013). Significant to several of Petitioner's claims affected by the *ex parte* information at issue here, at the time of the Horry County prosecution, post-conviction proceedings in a separate capital judgment from Georgetown County were underway, including claims of ineffective assistance of counsel against William Diggs, Mr. Stanko's appointed counsel in both cases who was subsequently disbarred for various ethical violations that occurred during the period of his representation of Mr. Stanko. Dkt. No. 65 at 16-17, 19, 38-39, 39 n. 16, 46 (J.Appx.a72-73, a75, a94-95, a95 n.16, a102); Dkt. No. 79 at 18, 27 (J.Appx.a323, a332); Dkt. No. 92 at 6 n.3.

[7] *Ayestas* holds that while the term "reasonably necessary" does not mean the services are absolutely "essential" to the representation, the correct standard "requires courts to consider the potential merit of the claims that the applicant wants to pursue" in addition to "the likelihood that the services will generate useful and admissible evidence." 138 S. Ct. at 1093, 1094.

Almost immediately, the global COVID-19 pandemic gripped the United

States and required drastic changes to the timeline in this case.[8] Recognizing that

necessary investigation of the case using funded expert services had to be delayed

due to pandemic conditions, the parties entered into an agreement under which

Petitioner would file a timely First Amended Petition pleading only record-based

claims, to be followed by a subsequent amendment raising "additional habeas

corpus claims beyond those contemplated" in that timely petition. Dkt. No. 34-1

(J.Appx.a47).

Petitioner timely filed the First Amended Petition on August 4, 2020 (Dkt.

No. 36), but pandemic restrictions brought on by successive surges of outbreaks,

ultimately causing over one million fatalities in the United States, mandated

extensions of time to file the Second Amended Petition contemplated in the

agreement to incorporate the fruits of field investigation and other specialist

services authorized by the District Court. Dkt. No. 40 (J.Appx.a51); Dkt. No. 50

(J.Appx.a53). But ultimately the District Court set a final date for the Second

Amended Petition of March 1, 2021, enunciating that the product of specialist

---

[8] By March 16, 2020, District Court Chief Judge Harwell entered a Standing Order, the first of numerous such orders, listing various material alterations to Court practices in response to the "national public health emergency" brought on by the COVID-19 global pandemic. *In re: Court Operations in Response to COVID-19*, Misc. No. 3:20-mc-105 (D.S.C. 2020).

services was not essential until Petitioner's response to Respondents' anticipated motion for summary judgment. Dkt. No. 61 (text order) (J.Appx.a55). It would be sufficient that the Second Amended Petition broadly state claims, while integration of the factual bases of those claims could come in a later responsive filing to Respondents' anticipated dispositive motion. *Id*. Undersigned counsel repeatedly expressed the belief that such pleadings should have been scheduled for a date after completion of funded specialist services and full development of the factual bases of the claims, and that a motion for summary judgment prior to evidentiary development would be premature, but ultimately had to accept the Court's admonishment while observing it has been the jurisdiction's practice to hold the motion for summary judgment until after such evidentiary development. *See* Dkt. No. 93 (J.Appx.a446); *Stokes v. Stirling*, 10 F.4th 236, 245 (4th Cir. 2021) (observing the "magistrate judge held an evidentiary hearing to determine whether there was good cause for the default under *Martinez* [*v. Ryan,* 566 U.S. 1 (2012)]").[9]

On March 1, 2021, undersigned counsel filed the Second Amended Petition, without the necessary contributions of funded investigation and other specialist

---

[9] Recently vacated and remanded for reconsideration in the light of *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022) by *Stirling v. Stokes*, No. 21-938, 2022 WL 1738587, at *1 (U.S. May 31, 2022).

services that had been deemed "reasonably necessary" prior to the pandemic and its massive disruptions. Dkt. No. 65 (J.Appx.a57). On July 28, 2021, Respondents filed their Return in conjunction with a motion for summary judgment. Dkt. No. 70(J.Appx.a159); Dkt. No. 71 (J.Appx.a160). On October 6, 2021, undersigned counsel filed another motion for specialist services, *viz.*, for certain brain imaging at the Medical University of South Carolina (MUSC) in Charleston, arguing they are "essential to certain specialist services already funded under 18 U.S.C. § 3599(f)." Dkt. No. 74 (*ex parte*) at 1 (J.Appx.a291).[10] Before and after Petitioner's response to Respondents' return and motion for summary judgment, and pleadings connected to Petitioner's Motion for Partial Summary Judgment (Dkt. No. 79 (J.Appx.a306); Dkt. No. 80 (J.Appx.a372); Dkt. No. 85 (J.Appx.a374); Dkt. No. 86 (J.Appx.a376); Dkt. No. 92), the District Court granted the brain imaging funding motion (Dkt. No. 78 (*Ex Parte* Funding Order) (J.Appx.a304)), and associated transport order (Dkt. No. 98 (J.Appx.a452)). As per the transport order, the brain imaging took place on March 3, 2022. *See* Dkt. No. 98 (J.Appx.a452). Undersigned counsel promptly requested the resulting records, but, despite continued efforts with hospital, did not receive the resulting images essential to

---

[10] Although some aspects of these expert services have necessarily been disclosed to Respondents, the basis for determining the scanning was reasonably necessary is "protected information that is properly withheld from the Respondent pursuant to the work product doctrine." Dkt. No. 74 at 2 J.Appx.a292).

completing reasonably necessary work of previously funded specialists until June 6, 2020.

On March 24, 2022—notwithstanding the District Court's findings that the brain imaging and previously funded specialist services that relied on them were reasonably necessary, and despite its awareness that Petitioner has not had the opportunity to present the fruits of those specialist services—the District Court granted Respondents' *Motion for Summary Judgment*. Dkt. No. 99 (J.Appx.a453); Dkt. No. 100 (J.Appx.a486).

Accordingly, on April 20, 2022, Petitioner filed his Rule 59(e) *Motion to Alter or Amend the Judgment*, arguing that the summary judgment works a manifest injustice, inter alia, by curtailing opportunity to implement expert services deemed reasonably necessary to the representation. Dkt. 102 at 13-14 (J.Appx.a499-500).

That same date, Respondents filed a motion to unseal "any *ex parte* funding requests, motions, orders, or other related matter." Dkt. No. 104 at 1 (J.Appx.a526). The District Court immediately granted the motion to unseal without affording Petitioner any opportunity to oppose the motion (Dkt. No. 108 (J.Appx.a530)), but upon Petitioner's emergency motion (Dkt. No. 109 (J.Appx.a532)), suspended that order to permit the opportunity to respond (Dkt. No. 110 (text order) ( J.Appx.a534)). Petitioner responded opposing the motion to

unseal and requesting in the alternative that the District Court stay any order to unseal, pending interlocutory appeal. Dkt. No. 111 (J.Appx.a535). After Respondents Reply (Dkt. No. 112 (J.Appx.a546)), the court granted the order to unseal and denied the request to stay the order on May 15, 2022 (Dkt. No. 113 (J.Appx.a555)).

The next day, May 16, Petitioner filed an emergency motion to stay the order pending appeal with a proposed order and filed his Notice of Interlocutory Appeal. Dkt. Nos. 114 (J.Appx.a559), 114-1 & 115 (J.Appx.a564). Respondents requested the court not sign any proposed order until it has had the opportunity to respond. Dkt. No. 117-1 (J.Appx.a570).[11] Counsel for Petitioner indicated no objection to a response, with the understanding that the *ex parte* filings remain *ex parte* until disposition of his stay motion, and requested an order to that effect. Dkt. No. 117 (J.Appx.a567).[12] Following Respondents' response to the emergency motion to stay the order (Dkt. No. 120 (J.Appx.a572)), their response to the request for a stay pending the outcome of that motion (Dkt. No. 122 (J.Appx.a583)), and Petitioner's corresponding replies (Dkt. Nos. 123 (J.Appx.a584), 124 (J.Appx.a588)), on May 25, 2022, the District Court issued an order denying

---

[11] These communications were not filed until the next day when Petitioner attached them to his filing.

[12] On May 18, counsel for Petitioner further memorialized with the court the understanding that the items remained under seal. Dkt. No. 122 (J.Appx.a583).

Petitioner's request for a stay pending disposition of his motion and his motion. Dkt. No. 125 (J.Appx.a590).

On May 26, Petitioner then sought to stay proceedings and discuss rescheduling Respondents' deadline for responding to the Rule 59(e) motion. Dkt. No. 126 (J.Appx.a595). Following a response and reply, the District Court denied this motion on May 27. Dkt. Nos. 127 (J.Appx.a598), 128 J.Appx.a601), 129 (J.Appx.a605).

That same date, Respondents filed their response to Petitioner's Rule 59(e) motion (Dkt. 130 (J.Appx.a608)), and on June 3, 2022, Petitioner filed his reply, Dkt. No. 132 (J.Appx.a132).

## IV. SUMMARY OF THE ARGUMENT

The District Court, under the supervision of the Chief Judge of this Court, considered Petitioner's requests for specialist services *ex parte* respecting the well-established due process interest in affording fundamental fairness to an indigent petitioner. Because the services have not been rendered, and the underlying litigation has not been finally disposed of in the District Court, Petitioner's interests in protecting his adversarial footing by not disclosing consultations that would divulge litigation strategy and tactics remains strong.

Further, Petitioner has not challenged the disposition of any *ex parte* requests, and thus in no way has he put the *content* of such requests at issue.

Petitioner has also exercised diligence at each step to assert and protect the confidentiality of these matters.

Respondents' apparently abandoned argument that § 3599(g)(3) requires disclosure is fatally flawed, because it does not apply when Petitioner has timely filed his Rule 59(e) motion.

Although recent Supreme Court decisions marking a dramatic departure from practices, including in this Court, undermine some of the previous bases calling for further evidentiary development at this stage, there remains an avenue for presenting the evidence in state court, and therefore confidentiality interests abide.

## V.     ARGUMENT

### A. Standards of Review

Review of the first Issue Presented is for abuse of discretion. *James*, 6 F.3d at 239. Abuse of discretion occurs in a number of ways, including when the decision "is flawed by erroneous factual or legal premises." *James,* 6 F.3d at 239 (citing *Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 401-02 (1990)).

The second Issue Presented concerns an issue of statutory construction which this Court reviews *de novo. E.g., Roe v. Howard*, 917 F.3d 229, 239 (4th Cir. 2019).

**B. The Interest in Adversarial Fairness for Indigent Petitioners in These Filings Being *Ex Parte* and Under Seal Remains Great**

1. Petitioner's Due Process Interest in Confidentiality That Was the Basis For the Funding Motions Being *Ex Parte* and Under Seal is Violated by the Order to Unseal Because He Has Not Completed Consultation with Funded Experts and Issues of Litigation Tactics and Strategy Remain.

The District Court adopts Respondents' assertion that "at 'this late date, there is no need for secrecy.'" Dkt. No. 113 at 3 (J.Appx.a557) (quoting Dkt. No. 112 at 3 (J.Appx.a548)). But the need for protecting this information endures because Petitioner has not had the opportunity to complete the approved expert services and his appellate rights concerning this disposition are obviously far from exhausted. While the motion for summary judgment was pending, the District Court approved a transport order to effectuate the *ex parte* orders previously granted with this Court's supervision by ordering brain imaging that would be subject to expert analysis integration with other expert services. The expert consultation involved here invokes precisely the due process interest arising from *Ake, Ayestas,* and *McWilliams* discussed herein (*supra* Part I.C): that an indigent party should not be placed at a strategic disadvantage by having to disclose consultations with expert services in order to secure funding.

This continuing interest is demonstrated by Respondents' use of the content in their response to Petitioner's 59(e) motion. They primarily used it to attempt to confront one of Petitioner's experts, as if he had been presented as an expert

witness who had offered opinion testimony. *See* Dkt. No. 130 at 11-15

(J.Appx.a618-22).[13] But Petitioner's expert has yet to conduct analysis of the brain

imaging or proffer an opinion based on that analysis.

Should Petitioner's Rule 59(e) motion be granted, he would continue

developing and implementing his litigation strategy. Respondents' intrusion into

planned and anticipated litigation strategy violates Petitioner's due process

interest—the basis for the District Court's decision, under this Court's supervision,

to take these filings *ex parte* and under seal in the first place.

2. Petitioner Has Not Placed the Content of the Motions or Orders at
   Issue Because He is Not Challenging Their Disposition

Petitioner invoked the *ex parte* funding motions and orders in his Rule 59(e)

motion for the mere fact of the funding grants, which based on the statutory

standard for such grants implied or expressly found that the underlying expert

services were "reasonably necessary" for the representation and therefore summary

disposition of his Second Amended Petition without allowing the opportunity to

---

[13] Respondents' attack is contrary to the governing standard in South Carolina and
federal courts: that "general acceptance" is not a precondition for admissibility of
opinion testimony rooted in reliable science. *State v. Council*, 515 S.E.2d 508, 517
(S.C. 1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588-89 (1993).
Therefore, the attack lacks even an indirect bearing on this interlocutory appeal
because it does not call into doubt the funding-related determination that these
specialist services were likely to generate admissible evidence.

utilize the funded services was premature and contrary to the standard for summary judgment. Dkt. No. 102 at 12-17 (J.Appx.a497-503).

The unsealing order contends that "Petitioner explicitly put the contents of his *ex parte* filings at issue." Dkt. No. 113 at 3 (J.Appx.a557).

A very similar district court order to unseal funding orders in *Madhi v. Stirling*[14] was based on similar reasoning and is distinguishable on this point. Dkt. No. 102 at 13 n.5 (J.Appx.a499). The *Mahdi* order granted a motion to unseal *ex parte* funding motions when Mr. Mahdi's Rule 59(e) motion referenced those filings. But the similarity dissipates on closer inspection. Mr. Mahdi's Rule 59(e) motion sought not only to alter or amend a dispositive ruling, it also challenged the denial of those funding motions. Dkt. No. 111 at 7 (J.Appx.a541). In doing so, it placed the content of the *ex parte* motions at issue—and indeed sought to relitigate them.[15]

---

[14] *Madhi v. Stirling*, No. 8:16-3911, Doc. No. 154 at 2-3 (2019), cited in Dkt. No. 111 at 7-8 (J.Appx.a541-42).

[15] Similarly, the Northern District of Texas court granted a motion to unseal previously denied *ex parte* funding requests in the context of a Fed. R. Civ. P. 60(b) motion seeking relief from a final judgment when the petitioner also sought to relitigate denial of the funding motion. *Crutsinger v. Davis,* No. 4:07-cv-00703, 2018 WL 3743881 at *2 (N.D. Tex. Aug. 7, 2018).

By contrast, Mr. Stanko is *not* challenging this Court's dispositions of the *ex parte* funding litigation. Indeed, he is arguing for the opportunity to effectuate them, as anticipated by the respective grants.

> 3. Neither the District Court nor Respondents Cite Any Authority for the Proposition that Mere Reference to an *Ex Parte* Filing Permits Unsealing It

Another part of the reasoning in *Mahdi* justifying the order to unseal is that Mr. Mahdi "included a substantial portion of the [ex parte funding] motion and the court's order [i]n his motion to alter judgment." Dkt. No. 111 at 7 (J.Appx.a541).

Here, in referencing the *ex parte* filings in his Rule 59(e) motion, Petitioner divulged none of the content of the funding motions or orders and only posited the fact they had been granted, which necessarily depended on "good cause" pursuant to §3599(f). A comprehensive survey of every reference makes this clear:

- This Court approved Petitioner's request for specialist services, which would develop and explore evidence beyond the state court record, finding the requisite necessity of such services. Dkt. No. 30 (*ex parte*) (granting Dkt. No. 19 (*ex parte*)).

  Dkt. No. 102 at 11-12 (J.Appx.a497-98).

- On October 6, 2021, undersigned counsel filed another motion for specialist services, *viz.*, certain brain imaging at the Medical University of South Carolina (MUSC) in Charleston, arguing they are reasonably necessary because they are "essential to certain specialist services already funded under 18 U.S.C. § 3599(f)." Dkt. No. 74 (*ex parte*) at 1.

  *Id*. at 13 (J.Appx.a499).

- [T]his Court granted the brain imaging funding motion, (Dkt. No. 78 (*Ex Part*e Funding Order)).

  *Id.*

- The Opinion fails to consider the bases pleaded and was taken without benefit of the newly developed evidence resulting from specialist services deemed "reasonably necessary" in part to provide the basis for clearing these procedural hurdles. *E.g.,* Dkt. No. 74 (*ex parte*) at 3-4 ("The evidence is also reasonably necessary for 'clearing any procedural hurdles' to adjudication of this claim in federal habeas corpus by demonstrating cause and prejudice to excuse the procedural default of this claim in state court pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012)."); Dkt. No. 78 (*ex parte* order granting the motion in Dkt. No. 74).

  *Id.* at 17 (J.Appx.a503) (footnote omitted[16]).

- Finally, the Opinion decides the waiver was valid without benefit of the results of certain specialist services previously deemed necessary under § 3599(f) to "help establish that Petitioner's ostensible waiver of counsel's conflict was not knowing, voluntary, and intelligent." Dkt. No. 74 (*ex parte*) at 8; Dkt. No. 78 (*Ex Parte* Funding Order).

  *Id.* at 24 (J.Appx.a510).

Petitioner nowhere reveals the content involving issues of litigation strategy or the identity or purposes of the expert services beyond what was necessarily disclosed in the openly filed motion for a transport order, namely, that Petitioner would undergo "certain brain imaging" at MUSC. *See* Dkt. No. 98 (J.Appx.a452).

---

[16] The footnote discloses that Dkt. No. 74 cited *Ayestas*, 138 S. Ct. at 1094 for a gloss on the "reasonably necessary" standard. *Id.* at 17 n.7 (J.Appx.a503).

Respondents unavoidably already had visibility on this fact prior to any reference made in Petitioner's Rule 59(e) motion.

And in contrast to *Mahdi*, Mr. Stanko took efforts to re-assert confidentiality over these matters. Mr. Stanko anticipated that his references to *ex parte* filings might be mistaken as an invitation to re-examine their content, so he twice re-asserted the ongoing need for maintaining them *ex parte*, briefly laying out the argument distinguishing *Mahdi*. Dkt. No. 102 at 13 n. 5 (J.Appx.a499); 24 n.10 (J.Appx.a510). Mr. Mahdi, by contrast, never "address[ed] the need for confidentiality" in the funding request nor in a separate filing made in response to the magistrate's request for more information. Dkt. No. 111 at 8 (J.Appx.a542).

Neither the District Court nor respondents point to any authority that a mere citation, such as has been made in earlier pleadings in this case (*e.g.*, Dkt. No. 97; Dkt. No. 98 (J.Appx.a452)), justifies unsealing *ex parte* filings.

In ordering the *ex parte* filings unsealed, the District Court abused its discretion because the order was flawed by the foregoing erroneous factual and legal premises.

### C. Precedent Clearly Shows § 3599(g)(3) is Not Triggered While a Rule 59(e) Motion is Pending

One of the first arguments Respondents make in their motion to unseal relies on § 3599(g)(3): "18 U.S.C. Section 3599(g)(3) provides: 'The amounts paid under this paragraph for services in any case shall be disclosed to the public, after

disposition of the petition,' and, because judgment has been entered, disclosure is now required." Dkt. No. 104 at 2 ¶4 (J.Appx.a527).

This blinkered reading of the statute is easily refuted because there is no disposition of the case while a Rule 59(e) motion is pending. Courts have understood that the plain language of this provision cannot be taken literally to mean disclosure is warranted as soon as the district court initially enters an order dispositive of a petition. *E.g., United States v. Tsarnaev*, No. 13-10200-GAO, 2016 WL 4994954, at *1 (D. Mass. Sept. 16, 2016); *United States v. Williams*, No. CRIM. 06-00079 JMS, 2014 WL 2932365, at *2 (D. Haw. June 30, 2014)[17]. The "intended meaning of the phrase 'after the disposition of the petition' was 'after the case is over.'" *Tsarnaev*, 2016 WL 4994954 at *1.

As noted *supra* at note 1, timely filing of a Rule 59(e) motion "suspends the finality of the original judgment." *Bannister*, 40 S. Ct. at 1703. In determining that a Rule 59(e) motion is not a second or successive petition, the Supreme Court observes it is "instead part of resolving a prisoner's first habeas petition." *Id.* at 1705. This understanding is consistent with the error-correcting rationale of Rule 59(e) because it "enables a district court to reverse a mistaken judgment." *Id.*

---

[17] Both of these cases find the statute's literal language leads to absurd results in original federal capital cases.

Finally, § 3599(g)(3)'s plain language only calls for disclosure of the "amounts paid" for expert services. The provision also requires public disclosure of "amounts paid" to attorneys, and CJA Guidelines specify that disclosure is required for "only the amounts approved for payment," not "any detailed information provided to justify the expenses." Guide to Judiciary Policy, Vol. 7, Pt. A ("CJA Guidelines"), Ch. 1, § 520.40.[18]

Respondents appear to have conceded this argument because Petitioner raised a response similar to that presented here in his response to the motion to unseal (Dkt. No. 111 at 6-7 (J.Appx.a540-41)), and Respondents made no mention of it in their reply (*see* Dkt. No. 112 (J.Appx.a546)).

## D. Recent Supreme Court Decisions Involving Limitations on Evidentiary Development in Federal Court do Not Foreclose the Relief Sought Here.

The Court recently addressed the question "whether the equitable rule announced in *Martinez* [*v. Ryan*] permits a federal court to dispense with § 2254(e)(2)'s narrow limits because a prisoner's state postconviction counsel negligently failed to develop the state-court record." *Shinn v. Ramirez*, 142 S. Ct.

---

[18] Another provision of the CJA Guidelines recognizes that CJA-related information should be shielded from disclosure when, among other circumstances, such public disclosure "could reasonably be expected to compromise defense strategies, investigative procedures, attorney work product, the attorney-client relationship or privileged information provided by the defendant or other sources"). *Id.* at § 510.030(c).

1718, 1728 (2022). In concluding "that it does not," *id.*, the Court left undisturbed the equitable exception to procedurally defaulted claims established in *Martinez*.[19] The Court also held that § 2254(e)(2) prohibition of a "evidentiary hearing the claim" also prohibits a hearing to establish the elements of the *Martinez* exception (a "*Martinez* hearing"), because "[a] contrary reading would have countenanced an end-run around the statute." *Id*. at 1738. The provision, according to *Shinn*, is meant to prohibit "intake of the evidence" by federal courts whether or not it is labeled a "hearing." *Id*.

The holding in *Shinn* was extended to circumstances bearing a superficial similarity to the case at bar. In *Shoop v. Twyford*, the Court held that funding to transport a habeas petitioner to a facility for neuroimaging was not justified under the All Writs Act ("AWA") because the governing standard—"necessary and appropriate in aid of [the federal court's] jurisdiction"—was not satisfied when the evidence likely to be produced was not "admissible" in federal court because of the holding in *Shinn*. *Shoop v. Twyford*, 2022 WL 2203347 at *5-6 (June 21, 2022).

Petitioner has relied on the pre-*Shinn* understanding that *Martinez* required an exception to the limits of § 2254(e)(2) and has cited this Court's endorsement of that understanding. *E.g,* in his Rule 59(e) motion, Petitioner cited *Stokes* as an

---

[19] Neither *Martinez*  nor *Trevino v. Thaler*, 569 U.S. 413 (2013), mention nor address § 2254(e)(2) or the question addressed in *Shinn*.

example of conducting a *Martinez* hearing—"an evidentiary hearing to determine whether there was good cause for the default under *Martinez*"—prior to disposing of a motion for summary judgment). Dkt. No. 102 at 12-13 (J.Appx.a498-99). *Shinn* certainly forecloses that approach, *Shinn* 142 S. Ct. at 1738, and on May 31, 2022, the Supreme Court remanded *Stokes* to this Court for reconsideration in the light of *Shinn*. *Stokes*, No. 21-938, 2022 WL 1738587.

Nonetheless, these decisions do not foreclose the relief sought in this interlocutory appeal. First, federal proceedings may be paused to permit presenting the newly developed evidence in state court, an avenue that remains open to petitioners. *Rhines v. Weber*, 544 U.S. 269, 277 (2005). Once presented to the state court, even if the state court refuses to look at the merits, the evidence would be available upon return to federal court. This is the avenue suggested in a brief signed by South Carolina arguing in favor of the strict enforcement of § 2254(e)(2):

> Moreover, evidence developed in state court for other purposes, such as to support a different claim or overcome a state procedural bar, can be considered in federal court to support a *Martinez*-excused ineffective-assistance claim consistent with section 2254(e)(2). See, e.g., *Apelt v. Ryan*, 878 F.3d 800, 825-34 (9th Cir. 2017) (considering evidence presented in state court and rejected on state-law procedural grounds in conjunction with a claim excused by *Martinez*). *Trevino* itself was an example of this principle in action. Before that case reached this Court, Trevino discovered evidence which could support claims that he did not raise in initial state-habeas proceedings. 569 U.S. at 419. The district court stayed federal-habeas proceedings so Trevino could exhaust state remedies. *Id*. at 419-20. When Trevino

returned to federal court, his ineffective-assistance claim and the evidence supporting it were incorporated in the state-court record and cognizable in federal-habeas proceedings (provided cause and prejudice existed to overcome procedural default). *See id*. at 420-21. That result is consistent with a faithful reading of section 2254(e)(2).[20]

The Court accepted this approach, acknowledging that a petitioner "might have an opportunity to return to state court" to adjudicate an unexhausted claim. *Shinn*, 142 S. Ct. at 1732. When the factual basis for the claim was not developed in state court, the petitioner "must show that factual development in federal court is appropriate." *Id*. at 1732-33. If Petitioner's Rule 59(e) motion prevails or he obtains relief from the summary judgment on appeal of the final judgment, this avenue would be available.

Finally, *Twyford* is inapposite because here Petitioner sought funding pursuant to § 3599 and not the AWA. While § 3599 also requires consideration of "the likelihood that the services will generate useful and admissible evidence," *Ayestas*, 138 S. Ct. at 1094, this consideration of admissibility is not tied, as it is in the AWA, to federal court jurisdiction.

## VI.    CONCLUSION

---

[20] Brief for the States of Texas, Alabama, Arkansas, Florida, Indiana, Kentucky, Mississippi, Nebraska, Ohio, Oregon, South Carolina, and Utah as Amici Curiae in Support of Petitioners, *Shinn v. Ramirez*, No. 20-1009, at *16-17 (Feb. 26, 2021), available at https://www.supremecourt.gov/DocketPDF/20/20-1009/170181/20210226134023599_20-1009%20Amici%20Brief.pdf.

For the foregoing reasons, Petitioner respectfully requests this Court reverse the unsealing order, and direct the District Court to prohibit Respondents from referencing or relying on or otherwise using any content of those filings beyond the limited references in Petitioner's pleading, and such other relief as this Court deems appropriate.

Should this Court determine the issue is moot at this juncture, Petitioner hereby notifies this Court of his intent to raise this issue in the appeal of the final judgment.

Respectfully submitted,

*/s/ E. Charles Grose, Jr.*
E. CHARLES GROSE, JR. (Fed ID 6072)
The Grose Law Firm, LLC
400 Main Street
Greenwood, SC 29646
(864) 538-4466 (tel)

*/s/ Joseph J. Perkovich*
JOSEPH J. PERKOVICH
Phillips Black, Inc.
PO Box 4544
New York, NY 10163
212.400.1660 (tel)
888.543.4964 (fax)
j.perkovich@phillipsblack.org

*/s Joseph C. Welling*[‡]
JOSEPH C. WELLING
Phillips Black, Inc.
100 N. Tucker Blvd., Ste. 750
St. Louis, MO 63101
314.629.2492 (tel)
888.543.4964 (fax)


*Counsel for Petitioner Stephen C. Stanko*

June 27, 2022

---

[‡] Notice of Appearance contingent on admission to the Court. Application for admission is pending ECF registration, which is pending as of Monday, June 27, 2022.

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of June, 2022, the foregoing was served upon all counsel of record in this case via the ECF filing system, pursuant to the Federal Rules of Civil Procedure.

*/s/ E. Charles Grose, Jr.*
E. CHARLES GROSE, JR. (Fed ID 6072)
Counsel for Petitioner, Stephen Stanko